[No. 14394. Department One. April 23, 1918.]

# THE STATE OF WASHINGTON, *Respondent*, v. ELIAS PIERSON, *Appellant*.[1]

BANKS AND BANKING—OFFICERS—OFFENSES—INFORMATION — SUF-FICIENCY. An information charging a bank officer with making a false statement of the assets with intent to deceive the state bank examiner demanding the same, charges the offense of subscribing to a false statement with intent to deceive any person authorized to examine into the affairs of the bank, rather than the offense of making or publishing any false statement of the amount of the assets or liabilities of the bank, both denounced by Rem. Code, § 3314.

CRIMINAL LAW—APPEAL—OBJECTIONS NOT RAISED BELOW—INFOR-MATION—DUPLICITY. Objections to an information for duplicity cannot be raised for the first time on appeal, nor at any time after plea of not guilty, unless such plea is withdrawn.

BANKS AND BANKING — OFFICERS — OFFENSES — STATUTES — CON-STRUCTION. Rem. Code, § 3314, of the banking act, defining the offense of knowingly subscribing to or exhibiting false or fictitious papers or securities with intent to deceive any person authorized to examine the affairs of the bank, covers an officer's sworn statement of the assets made upon demand of the state bank examiner, and is not limited to papers that are forged or spurious.

SAME—OFFICERS—OFFENSES—EVIDENCE — SUFFICIENCY. A charge of knowingly subscribing to a false statement of the assets of a bank with intent to deceive the state bank examiner is supported by proof that the statement of the loans and discounts included two drafts amounting to $5,362 which were not owned by the bank, notwithstanding the fact that there was accrued and unpaid interest due the bank and other resources not included in the statement which would equal or exceed the amount of the two drafts.

CRIMINAL LAW—APPEAL—HARMLESS ERROR—EVIDENCE. Error cannot be assigned on the admission of testimony that was not materially different from the testimony given by the accused.

SAME—APPEAL—HARMLESS ERROR—INSTRUCTIONS. Error cannot be assigned on the reading of the entire statute defining three crimes, when a subsequent instruction was given clearly defining the crime covered in the charge and the jury could not have been misled.

[1]Reported in 172 Pac. 236.

Appeal from a judgment of the superior court for Pacific county, Chapman, J., entered March 6, 1917, upon a trial and conviction of subscribing to a false paper with intent to deceive the state bank examiner. Affirmed.

*F. D. Couden, George F. Vanderveer,* and *Lockerby & Wright,* for appellant.

*John I. O'Phelan (M. M. Richardson,* of counsel), for respondent.

MAIN, J.—The defendant in this case was charged, by amended information, with the crime of subscribing to a false paper with intent to deceive the state bank examiner. To this amended information, which will hereafter be referred to as the information, a demurrer was interposed upon the ground that it did not state facts sufficient to constitute a crime. The demurrer being overruled, the cause in due time came on for trial, and resulted in a verdict finding the defendant guilty of the crime charged. A motion for a new trial being made and overruled, the defendant appeals.

The facts sufficient for an understanding of the questions presented may be briefly summarized as follows: For some time prior to the 23d day of June, 1915, the appellant was the cashier and managing officer of the First International Bank, located at South Bend, this state, and continued in that capacity until on or about the 19th day of July, 1915, when the bank was closed by direction of the state bank examiner. The state bank examiner, as he is authorized to do by law, called for a statement of the condition and affairs of the First International Bank at the close of business on the 23d day of June, 1915. Pursuant to this request, the appellant, on July 3, 1915, subscribed and verified a report to the state bank examiner of the affairs and condi-

tion of the bank at the close of business on the 23d day of June. This report was on a blank prepared and furnished by the state bank examiner, and opposite the item of loans and discounts, appears in the appropriate columns $248,491.66. The information is too long to be here set out in full, but it charges that the appellant, as cashier of the First International Bank, made and subscribed to a false paper, pursuant to the lawful call of the state bank examiner; that the appellant knowingly and wilfully set forth in the report, opposite the item of loans and discounts, that the First International Bank, at the close of business on the 23d day of June, owned commercial paper amounting to $248,-491.66; that this statement of resources was false in this, that there was included therein as part thereof the sum of $5,362, being the amount of two drafts, commonly called acceptances, of the face value of $5,477, upon one of which there had been paid $115; that the bank was not then the owner of these two drafts, and that they were included in the report for the purpose of deceiving the state bank examiner.

The information was drawn under Rem. Code, § 3314, this being one of the sections of the bank act. In this statute three crimes are defined: First, wilfully and knowingly subscribing to, or making or causing to be made, any false statement or false entry in the books of any bank or corporation transacting a banking business; second, knowingly subscribing to or exhibiting false or fictitious papers or securities with the intent to deceive any person or persons authorized to examine into the affairs of the bank; and third, the making or publishing any false statement of the amount of the assets or liabilities of a bank or corporation transacting a banking business. This numerical division of the statute does not appear in the act, but is made here for convenience of reference.

The appellant's first point is that he was charged with one offense and found guilty of another. In support of this contention, it is argued that the information is drawn under the third division of the statute, and that the appellant was tried and convicted under the second. The information charges that the appellant knowingly subscribed to a false paper with the intent to deceive the state bank examiner. This is the crime defined in the second division of the statute and for which the appellant was tried and convicted. We do not think that the information, even though there may be some surplusage in it, will bear the construction that it was founded upon the third division of the statute. In addition to this, the information was demurred to upon the sole ground that the facts therein stated did not constitute a crime. It was not demurred to upon the ground that more than one crime was charged. Objections to the information because of duplicity cannot be raised for the first time on appeal, nor at any time after the entry of a plea of not guilty, unless such plea be withdrawn. *Territory v. Heywood,* 2 Wash. Terr. 180, 2 Pac. 189; *State v. Snider,* 32 Wash. 299, 73 Pac. 355; *State v. McBride,* 72 Wash. 390, 130 Pac. 486.

Upon the oral argument, if we gathered it correctly, it was stated on behalf of the appellant that the controlling question upon this appeal is that the appellant was not shown to have signed such a paper as he was charged with having signed. In support of this contention it is argued that the false paper mentioned in the statute refers to one which is forged or spurious, and not to one which is duly subscribed to by the person purporting to sign it, and contains an untrue statement in the body of the instrument. If this were the meaning of the statute, the legislature would hardly have used the word "subscribed," because a spurious

or forged document could not well be subscribed by the .person purporting to sign it. A case strikingly like this was before the supreme court of the state of New Jersey, in *State v. Twining*, 73 N. J. L. 3, 62 Atl. 402. The defendants in that case were convicted of exhibiting to an examiner of the state banking department a certain false paper, knowing it to be false, with intent to deceive such officer as to the condition of a named bank or trust company of which Twining was the president and the other defendant the treasurer. The false paper consisted of a typewritten copy of a minute of an alleged meeting of the board of directors of the bank or trust company, which meeting was in fact never held. The statute of the state of New Jersey provided that every director, officer or agent of a trust company who wilfully and knowingly should subscribe or exhibit any false paper with intent to deceive any person authorized to examine as to the condition of such trust company should be guilty of a crime. In the course of the opinion it is said:

"It was further argued that, conceding the statute under which this indictment is found, to be valid, the document exhibited in this case cannot be said to be a false paper within the meaning of the act, the contention being that 'knowingly subscribes or exhibits any false paper' means negotiable paper, or some paper which is a part of the assets of the bank. We are unable to give this narrow construction to these words, in the connection in which they stand in the statute. We think it means what it says 'subscribes or exhibits any false paper, with intent to deceive the examiner.' Any other construction destroys all force to the word 'subscribes,' and any construction which sustains the theory that an offense exists by subscribing a false paper also upholds the construction that to exhibit such false paper to the examiner, with intent to deceive, is within the statute. But it is further insisted that 'the false paper must be one that can deceive the examiner as to

the financial condition of the corporation.' We agree with that view. We think under the proof that in exhibiting this paper it was the purpose of the defendants to deceive the examiner as to the financial condition of the bank.''

It is next contended that the verdict is contrary to the evidence. To this view we cannot subscribe. The evidence shows that the two drafts mentioned were included in the total amount of the loans and discounts reported; but it is said that there was accrued and unpaid interest due the bank and other resources, not included in the statement, which would equal or exceed the amount of the two drafts. This, however, does not meet the situation. The purpose of the report to the state bank examiner was to advise that officer as to the condition of the bank, and in this report it was not contemplated that accrued and unpaid interest, or notes which had been charged off the books of the bank, should be included.

It is next contended that the court erred in permitting a deputy state bank examiner to testify in effect that accrued and uncollected interest and items charged off as losses on the books of the bank were not properly a part of the report to the state bank examiner under the item of loans and discounts. The testimony of this witness upon this question was not materially different from that of the appellant himself. The assignment of error based thereon is not meritorious.

Finally, it is contended that the court erred in the giving of certain instructions and in the refusing of requests proposed by the appellant, but we find no error in this regard. The issues in the case were fully covered by the instructions given. It is true that the court read in full, as a part of the instructions, the entire statute, or what we have designated the three divisions thereof, but in a subsequent instruction the crime cov-

ered by the second division was clearly and specifically defined to the jury. While it was unnecessary for the court to embody the entire statute in the instructions, the jury could not have been misled thereby in view of the subsequent instruction.

The judgment will be affirmed.

ELLIS, C. J., PARKER, FULLERTON, and WEBSTER, JJ., concur.